## LAWRENCE v. GRAMBLING.

1. The proceeds of a sale made under a junior judgment is satisfaction *pro tanto* of an execution then in the sheriff's office, issued upon a senior judgment.
2. Where property was sold under a junior execution for an amount sufficient to pay a senior execution, a subsequent payment on the senior execution by the judgment debtor does not raise a presumption that the debtor consented to an application of the proceeds of the sale to the junior execution.
3. *Semble.* Money realized by the sheriff from a sale of defendant's property under an execution issued upon a judgment for the purchase-money should be applied to the oldest liens in the sheriff's office, although under them, by reason of the homestead laws, such property could not have been levied and sold.
4. In the absence of testimony showing defendant's right to a homestead, it cannot be assumed that no application of money was made to an execution because of the homestead exemption laws.

Before PRESSLEY, J., Spartanburg, March, 1882.

This case, once before on appeal to this court, will be found reported 13 *S. C.* 120. The case is fully stated in the opinion of this court, but it should be added that the execution issued on the Means judgment had been returned to the clerk's office "at least six years prior to this trial," so that no execution upon that judgment was in the sheriff's office when he made the sale under the McMakin judgment in August, 1877.

*Messrs. Duncan & Cleveland, Bobo & Carlisle,* for appellant.

*Mr. J. S. R. Thomson,* contra.

July 5th, 1883. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. There were two judgments in the clerk's office for Spartanburg county against the plaintiff, Joseph Lawrence—one known as the "McMakin judgment," and the other as the "Means judgment." The first was for $46.30, and was the senior judgment. It was entered and dated October 28th, 1859. The second was entered on May 9th, 1870. This last was upon a note for $698.87, given to Means in August, 1859. Both of these claims antedated the constitution of 1868. The last was contracted in the purchase of a tract of land by Lawrence (the land now in controversy), and upon the judgment rendered on this note the judge certified that it was for the purchase-money for 551 acres of land, on which Lawrence then resided.

On September 8th, 1871, by virtue of an execution issued on this judgment, the sheriff of Spartanburg county levied upon this land, and on December 4th, 1871, sold the same to J. W. Carlisle for $219, the highest amount bid. This bid was transferred by Carlisle to Lawrence, who paid the same to the sheriff, and Lawrence received titles. At the time of this sale the McMakin judgment, which was older than the Means judgment, was standing open and unsatisfied, but no application of the proceeds of the sale was made to this judgment. Lawrence was in possession and still retained possession, being the purchaser under the transfer of the Carlisle bid to him. Afterwards, to wit, on September 1st, 1875, the sheriff levied on 300 acres of this land, by virtue of an execution issued on the McMakin judgment, and on August 6th, 1877, sold the same to Bobo and Cleveland for $20, which sum was paid to the sheriff; upon which payment the sheriff executed titles to the said Bobo and Cleveland, who conveyed by deed of quitclaim to the defendant, Grambling. On November 5th, 1877, Lawrence paid off the McMakin judgment, the sheriff receipting to him for $117.96, in full, of the balance in the case of *McMakin* v. *Lawrence.*

Shortly after this conveyance to Grambling, he began to cut timber from the premises, and this action was commenced by Lawrence for damages. By consent of the parties, however, the

presiding judge, by order, embraced the question of title in the issue as well as damages.

At the trial, some request was made by defendant's attorney that the judge should charge as to certain alleged irregularities in the McMakin judgment, but no exception has been taken as to this matter, the judge having charged generally that the McMakin judgment had been sufficiently proved, with which defendant was satisfied. It will not be necessary, therefore, for this court to consider this question. The defendant further requested the judge to charge : " That the fact that Lawrence paid the balance due on the McMakin judgment after the sale of the land under the Means and junior judgment, raises the presumption that he (Lawrence) consented to the application of the proceeds of said sale in some other way than to the McMakin judgment." The judge, it seems, declined this request, and charged : " That the payment of his bid by Lawrence to the sheriff at the sale under the Means judgment was a satisfaction, in full, of the McMakin judgment, and that said judgment and execution were satisfied and could not afterwards support a sale of the land, and that the jury must find a verdict for the plaintiff for the land in dispute.

The jury found a verdict for the plaintiff, together with damages, in the sum of $500. The defendant appealed upon the following grounds : 1. " Because his Honor erred in refusing to charge the jury : That the payment by the plaintiff of the balance due upon the judgment of Jas. McMakin against plaintiff was a satisfaction of the act of the sheriff, and validated the sale of plaintiff's land under said judgment and execution. 2. Because his Honor erred in charging the jury that the sale of plaintiff's land under the Means judgment and execution was a satisfaction in full of the McMakin judgment, and that said last judgment and execution were void and could not support a sale of plaintiff's land. 3. Because his Honor erred in charging the jury that from all the evidence it was their duty to render a verdict for the plaintiff."

It will be seen at once that the only question in the case is whether the judge erred in holding as matter of law under the facts, about which there was no dispute, that the sale of the land

under the Means judgment satisfied the McMakin judgment. If there was no error in this, then it followed, as matter of law, that the plaintiff was entitled to the verdict, and the judge was right in directing the jury to render a verdict for the plaintiff. The defendant bought under and claimed through the McMakin judgment, and if, in law, that had been already satisfied, the sale by the sheriff thereunder was a nullity, and, of course, his deed conveyed no title.

Now, it will be conceded, as a general proposition, that where there are two or more judgments against a common debtor, of different dates, and his property, or any portion thereof, is sold by the sheriff under execution issued upon any of said judgments, that the proceeds of such sale amount to a satisfaction of the oldest judgment *pro tanto*, whatever may be the application by the sheriff. The authorities are abundant to this point. *Lynch* v. *Hanahan*, 9 *Rich.* 186; *Davis* v. *Barkley*, 1 *Bailey* 140; *Davis* v. *Hunt*, 2 *Bailey* 416; *Furman* v. *Christie*, 3 *Rich.* 1; *O'Neall* v. *Lusk*, 1 *Bailey* 220.

This general proposition is not contested by the appellant, but it is insisted that there are exceptions to this rule, and the appellant contends that while it is true that the senior judgment creditor has the legal right to have such proceeds applied to his judgment in preference to all others, yet that this right may be waived, and when this is done, either by word or act, the application may be made by the sheriff to junior judgments, leaving the senior open and still of force. And it is urged that such waiver was made here. As far as we can see from the brief, the question of waiver generally was not made below.

The defendant relied upon one fact, viz.: the payment by Lawrence of the McMakin judgment after the sale of the land under the Means judgment, as raising a presumption that he had consented to the application of the proceeds of that sale otherwise than to the McMakin judgment—in other words, that he thereby recognized that the McMakin judgment had not been satisfied by that sale, and he requested the judge to charge as law that such should be the legal inference. This fact relied on by the defendant was not contested; it was admitted, and, therefore, in determining the question of law raised by the appel-

lant as springing from it, it was wholly unnecessary for the judge to submit it to the jury as a question of fact. The appellant claimed that, admitting the fact to be true, the judge should charge that in law it raised the presumption that Lawrence had consented to the postponement of the McMakin judgment, and, therefore, that it was open and valid when the sale to Bobo and Cleveland took place. This the judge declined, and we see no error in this, as we know of no principle of law which would have authorized him thus to charge. So, the question comes back whether, under the facts as admitted, the judge erred in applying the general rule, viz.: that the proceeds of sale by the sheriff must go to the senior judgment.

It is urged that at the time of the sale under the Means judgment, the case of *In re Kennedy* had not been overruled, and inasmuch as in that case the Supreme Court of this State had held that the homestead exemption of the constitution of 1868 applied as well to debts antedating the constitution as to those subsequently contracted, and inasmuch as the debt to Means was a debt contracted in the purchase of the land, which in the constitution itself was excepted from the homestead provision, that the land could only have been sold under the Means judgment and the proceeds only have been applied thereto. It may be admitted, for the sake of the argument, that as long as *In re Kennedy* remained undisturbed, the McMakin judgment could not have been enforced by the sheriff against the homestead of Lawrence, and yet it would not follow that the proceeds of the sale arising from the enforcement of a judgment which could effect a sale would demand a different application than that required by the well-established principle referred to above, viz.: to the senior judgment first.

The homestead provisions do not undertake to extinguish the claim of creditors against their debtors, either in whole or in part, nor do they create any new estate in the debtor. They merely prevent a sale of a certain portion of the debtor's property by mesne or final process. They stay the hands of the sheriff or other officer of the law, but this is all. The lien of judgments is not disturbed, nor is any preference given to creditors beyond

that which their own vigilance may secure.  Whether a certain judgment can be enforced against the homestead of a debtor is a very different question from that arising upon the application of the proceeds of such homestead when brought into the office by a sale under an execution authorizing the sale.

But it is unnecessary to decide this question in this case, because it does not appear that the homestead was involved. It is true it does appear that the note to Means, upon which his judgment was founded, was given for the land in controversy. But it does not appear that it was sold under that judgment because of that fact.  There may have been other reasons, for aught that appears in the case, why Lawrence could not have claimed a homestead as to either of the judgments against him. We cannot assume that he was the head of a family and otherwise entitled under the constitution to the homestead exemption.

All that appears in the case is, that there were two judgments in the office against him, one junior to the other; upon which last the judge had certified that it was founded on a note given for the land then in the possession of Lawrence; but it does not appear, except by inference, that he had no other lands, or that he could otherwise claim a homestead out of this.  It further appears, that the land was sold under the junior judgment, and that the proceeds were sufficient in amount to discharge the senior judgment.  Under these facts we think the Circuit judge was correct in applying the general rule, and in holding that the McMakin judgment should be regarded as paid, and consequently that the subsequent sale thereunder was void.

It is the judgment of this court that the judgment of the Circuit court be affirmed.